UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLA CAMPBELL-JACKSON,

    Plaintiff,

v.

STATE FARM INSURANCE,

    Defendant.
_____/

Case No. 1:21-cv-1044

Hon. Hala Y. Jarbou

## **OPINION**

Plaintiff, Dr. Carla Campbell-Jackson, worked for Defendant State Farm until May 9, 2016, when it terminated her. Plaintiff is an African-American woman. In this action, she contends that she faced a racially hostile work environment at State Farm, and that it discriminated against her on account of her race and retaliated against her for complaining about racism and discrimination at State Farm, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq., and Michigan's Elliot-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2701. Before the Court is State Farm's motion to dismiss the complaint (ECF No. 4). For the reasons herein, the Court will grant the motion in part, dismissing Plaintiff's ELCRA claims and part of her Title VII claims.

## **I. BACKGROUND**

Plaintiff alleges that she worked at State Farm for twenty-eight years. During that time, she allegedly complained about State Farm's "rampant culture of racism and discrimination," which created a hostile work environment. (Compl. ¶ 1, ECF No. 1.) For instance, in September 2014, she complained to her manager and to the human resources department that State Farm was

"allowing racism to persist throughout its culture." (*Id.* ¶ 41.) At some point,[1] she received a "respected" "CPCU" designation; her white managers told her that this stood for "Colored People Can't Understand." (*Id.* ¶ 38.) On other occasions, a State Farm employee "wove a stick man with a noose around his neck to signify an African American being hung"; a State Farm manager "openly displayed a picture of a slave plantation in his office"; employees distributed a "racist meme" throughout the office; there was racist graffiti written on the bathroom stalls that stated, "No Muslims, Blacks and Spics"; pictures of minority State Farm managers were "'X'd out on a wall"; a white employee told another employee that "white people talk proper and black people talk different"; State Farm leaders called an African-American manager a "mutt"; Plaintiff's "leaders" told her that she needed to "'talk more like someone from the inner-city of St. Louis'"; other employees attempted to force Plaintiff to kiss a live pig as a form of "racist humiliation"; and other employees made racist comments, including use of the "N" word. (*Id.* ¶ 48.)

In February 2015, Plaintiff "expressed concern" that a "Caucasian candidate was chosen for a promotion over an objectively and clearly more qualified African American candidate." (*Id.* ¶ 48(n).)

In 2015 and 2016, while working in State Farm's special investigative unit, which was intended to identify customers "likely to engage in fraud," Plaintiff allegedly noticed a trend that "minority group members' [insurance] claims" were "systematically and illegally denied by State Farm." (*Id.* ¶¶ 44-45.) She expressed concerns about this to "State Farm leadership," but they ignored her. (*Id.* ¶ 45.)

In April 2016, Plaintiff and other State Farm employees received an anonymous, racist letter stating that State Farm did not want to employ minorities. Plaintiff "expressed

---

[1] Plaintiff's complaint does not specify when the events described in this paragraph occurred.

disappointment and concern" about this letter and about other conduct she had witnessed. (*Id.* ¶ 49.) Vice President of Human Resources Ricardo Garcia discussed those concerns with Plaintiff. She then sent him an email describing "discriminatory practices" that she had witnessed at State Farm. (*Id.* ¶ 50.) On May 5, 2016, "shortly after" Plaintiff expressed her concerns about the letter, Garcia contacted her and asked to meet with her. (*Id.* ¶ 52.) On May 9, 2016, Garcia and "Claims VPO" Kelley Bever met with Plaintiff and told her that State Farm was terminating her "for the stated reason of transmitting 'Sensitive Personal Information' ('SPI') through her email to State Farm's Vice-President of Human Resources." (*Id.* ¶ 54.) Plaintiff believes that this stated reason was pretextual.

Plaintiff filed a complaint with the EEOC in May 2016. (*See* Charge of Discrimination, ECF No. 4-2.)[2] In that complaint, she alleged that, "[b]eginning in September 2014," she complained to her manager and to the human resources department that State Farm "was discriminating against minority employees and customers." (*Id.*, PageID.62.)  After she complained, she "received the lowest performance rating in [her] twenty-eight-year career with the company." (*Id.*) She also mentioned the racist letter that she and "other minority employees" received in April 2016, and the fact that she complained to State Farm about the letter. (*Id.*) And she mentioned her termination that occurred shortly thereafter. Based on these facts, she contended that she was "harassed because of [her] race, African American, and . . . was discharged due to [her] opposition [to] what [she] believed to be unlawful employment practices[.]" (*Id.*)

The EEOC investigated her complaint. On February 5, 2021, it issued a determination which concluded that the evidence "supports . . . that the Charging Party was harassed due to her race and discharged in retaliation for complaining about harassment." (Compl., PageID.4.) It

---

[2] The Court can consider the EEOC Charge because Plaintiff mentions it in her complaint.

3

recommended that State Farm pay Plaintiff almost $500,000 in compensatory and punitive damages and institute various reforms at its workplace. (*Id.* ¶ 8.)

Plaintiff brought this action in December 2021. In her complaint, she asserts four grounds for relief. In Counts I and III, she contends that State Farm subjected her to a racially hostile work environment and terminated her for racially discriminatory reasons, in violation of Title VII and the ELCRA.

In Counts II and IV, Plaintiff contends that State Farm retaliated against her for reporting racism and discriminatory conduct at State Farm by terminating her, in violation of Title VII and the ELCRA.

## II. DISMISSAL STANDARD

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Assessment of the complaint under Rule 12(b)(6) must ordinarily be undertaken without resort to matters outside the pleadings; otherwise, the motion must be treated as one for summary judgment under Rule 56. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

### III. ANALYSIS

State Farm makes three arguments for dismissal: (1) Plaintiff's claims under 42 U.S.C. § 1981 and the ELCRA are time-barred; (2) Plaintiff's Title VII claim should be dismissed under the doctrine of laches; and (3) Plaintiff failed to exhaust claims that she suffered harassment or racial discrimination at State Farm.

**A. Statute of Limitations (ELCRA, § 1981)**

State Farm contends that Plaintiff's claims under the ELCRA and 42 U.S.C. § 1981 are untimely. Plaintiff concedes that her ELCRA claim is untimely. (*See* Pl.'s Resp. Br. 14, ECF No. 10.)

As to a claim under § 1981, however, Plaintiff asserts that State Farm misconstrues her complaint. She does not state an independent claim under § 1981. Rather, her complaint cites 42 U.S.C. § 1981a as the basis for her right to recover damages for a Title VII violation. *See Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 534 (1999) ("With the passage of [§ 1981a], Congress provided for additional remedies, including punitive damages, for certain classes of Title VII and ADA violations."). Accordingly, the Court will dismiss the ELCRA claim. But because there is no separate claim under § 1981 asserted in the complaint, the Court will not dismiss such a claim.

### B. Laches

State Farm argues that the Court should find that Plaintiff's Title VII claim is barred by the doctrine of laches. "The defense of laches 'requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *Cleveland Newspaper Guild, Local 1 v. Plain Dealer Pub. Co.*, 839 F.2d 1147, 1153 (6th Cir. 1988) (quoting *Costello v. United States,* 365 U.S. 265, 282 (1961)). This defense is available in a Title VII action. *Id.* But "dismissal of a plaintiff's claim is an extreme result, and should be accomplished only when the prejudice to the defendant can be avoided in no other way." *Id.* at 1155. Defendant has the burden to establish the defense. *EEOC v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 439 (6th Cir. 2006).

> The timing of a Title VII claim depends, in part, on the status of EEOC proceedings.
>
> A Title VII claimant must file a claim with the EEOC (in a nondeferral state) within 180 days after the allegedly discriminatory act. 42 U.S.C. § 2000e-5(c). Once EEOC proceedings have terminated and the agency issues its right to sue notice, the claimant has 90 days to file suit in federal court. *Id.* at § 2000e-5(f)(1). If, however, the EEOC proceedings are still in progress, a claimant may request a right to sue letter 180 days after filing of the charge. *Id.*

*Cleveland Newspaper Guild*, 839 F.2d at 1150. In other words, before filing a lawsuit, the claimant must first file a complaint with the EEOC. No statute of limitations runs while the EEOC proceedings are pending. If the EEOC proceedings are not complete 180 days after the EEOC complaint is filed, then the claimant can request a right-to-sue letter from the EEOC in order to proceed with a private lawsuit. Nevertheless, "administrative resolution of claims is the preferred method." *Id.* at 1153. And courts are reluctant to dismiss cases where the EEOC is the one responsible for the delay. *Id.*

Some factors that the Court of Appeals for the Seventh Circuit has considered when assessing whether a plaintiff's delay in filing a Title VII claim was unreasonable include: (1) the

6

plaintiff's readiness in filing a complaint; (2) the amount of time during which the plaintiff was represented by counsel; (3) whether counsel assisted the plaintiff with the EEOC claim; (4) whether it was apparent that no administrative resolution was imminent; (5) whether the plaintiff could have requested a right-to-sue letter; and (6) what actions, if any, the plaintiff took to prod the EEOC to resolve the administrative proceedings. *See Jeffries v. Chicago Transit Auth.*, 770 F.2d 676, 680 (7th Cir. 1985).

State Farm contends that Plaintiff did not act diligently because she could have filed suit earlier had she requested a right-to-sue letter earlier in the process. She filed her EEOC complaint on May 18, 2016 (ECF No. 4-2), and State Farm received notice shortly thereafter, submitting a position statement in June 2016 (ECF No. 4-4). Plaintiff contends that she learned in June 2021 that the conciliation process had failed. She asked for a right-to-sue letter in August 2021 and the EEOC issued a right-to-sue notice on September 16, 2021 (ECF No. 4-5). She then filed her complaint in this action on December 9, 2021.

State Farm contends that it has been prejudiced by Plaintiff's delay because, among other things, it closed the office where Plaintiff and many of the relevant witnesses worked, causing those employees to find jobs elsewhere, either at State Farm or at another company. Some of those employees have since retired and one has died. Also, State Farm contends that some evidence has been lost. It has not retained many of the documents that may be relevant to Plaintiff's claims and the memories of witnesses have faded.

State Farm's laches defense is premature. It relies upon factual assertions that are unsupported and that the Court cannot evaluate at this stage. For instance, the Court does not know what occurred during the EEOC proceedings and what actions Plaintiff took, so it is not clear whether and when it would have been apparent to Plaintiff that no resolution was imminent, or

7

whether she should have taken additional steps to prod the EEOC into action. *Cf. Jeffries*, 770 F.2d at 680 (finding inexcusable delay where the claimant "did nothing for at least nine years. He did not call or write to the EEOC"). Plaintiff contends that she was diligent because she maintained regular contact with the EEOC. However, a motion to dismiss is not the proper means for resolving those facts.

Similarly, the Court cannot adequately assess the extent of any prejudice to State Farm. If evidence has been lost, it is not yet clear how that loss will impact State Farm's ability to present a defense. Neither that loss nor its impact are apparent from the face of Plaintiff's complaint or from any evidence that the Court can consider on a motion to dismiss. *Cf. Reid v. Baker*, 499 F. App'x 520, 526 (6th Cir. 2012) (concluding that a court could dismiss a claim that was barred by the statute of limitations because the "court [could] ascertain from the complaint that the period for bringing the claim [had] expired"); *see also Cleveland Newspaper Guild*, 839 F.2d at 1150 (considering the defendant's laches defense at the summary judgment stage); *Watkins Motor Lines*, 463 F.3d at 438-40 (same); *Jeffries*, 770 F.2d at 679 (same); *Cannon v. Univ. of Health Sciences/The Chi. Med. Sch.*, 710 F.2d 351, 359 (7th Cir. 1983) (same).

State Farm insists that Plaintiff has an affirmative duty to "allege a failure to timely file claims under Title VII" (Def.'s Reply Br. 6, ECF No. 16), but it cites no case requiring a plaintiff to plead facts in avoidance of the laches defense. State Farm relies on an opinion stating that a plaintiff "must affirmatively plead an exception to the limitations statute," when "the court can ascertain from the complaint that the [limitations period] has expired." *Reid*, 499 F. App'x at 526. But that statement does not apply here because State Farm is not asserting a statute-of-limitations defense. Accordingly, the Court will deny State Farm's motion to the extent it relies upon laches.

### C. Exhaustion

Finally, State Farm argues that Plaintiff did not exhaust her claims for "racial harassment or discrimination leading to the termination of her employment." (Def.'s Br. 18, ECF No. 4.) Instead, according to State Farm, she only exhausted a claim that "she was terminated in retaliation for having raised concerns regarding the SIU unit or the April anonymous letters." (*Id.*)

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in [her] EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citing 42 U.S.C. § 2000e-5(f)(1)). "This rule serves the dual purpose of giving the employer information concerning the conduct about which the employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion." *Id.* "At the same time, because aggrieved employees—and not attorneys—usually file charges with the EEOC, their *pro se* complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Id.* at 362. Accordingly, "'whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.'" *Id.* (quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)).

As discussed above, Plaintiff's EEOC complaint expressly alleged harassment on the basis of her race and discharge due to her complaints about discriminatory practices at State Farm. In other words, it alleged harassment and retaliation. It did not allege that State Farm terminated her due to her race. Likewise, the EEOC's determination letter does not mention the issue, which indicates that the EEOC did not investigate it. That letter states, in relevant part:

> The Charging Party alleged that she was discriminated against on the bases of her race (African-American) and retaliation in violation of Title VII by being harassed and by being discharged. . . .

9

> . . . Charging Party complained of harassment based on her race on April 26, 2016 after receiving a letter on April 25, 2016 which contained offensive language regarding her race. The Respondent failed to take prompt and appropriate action regarding this harassment. The Charging Party alleged that she was discharged on May 9, 2016 in retaliation for having complained about the harassment. The evidence supports a violation for these Title VII allegations that the Charging Party was harassed due to her race and discharged in retaliation for complaining about the harassment. Like and related and growing out of the investigation, the evidence supports a reasonable cause finding for a class of ten individuals who were also subjected to harassment based on their race (African-American) and/or religion (Muslim) after Respondent failed to take prompt and appropriate action after it learned about the April 25, 2016 letter, thereby fostering a hostile work environment from April 25, 2016 through the day the Portage location closed.

(EEOC Determination, ECF No. 10-1, PageID.107.)[3] Plaintiff focuses on the first paragraph, arguing that it shows that the EEOC investigated an "uncharged" or "related" claim of race-based termination. But while it may be possible to construe "being harassed and . . . being discharged" as two different examples of the racial discrimination mentioned in that paragraph, the next paragraph makes clear that the racial discrimination at issue was the "harassment [of Plaintiff] based on her race" caused by the April 2016 letter. It also makes clear that the alleged motive for Plaintiff's termination was "retaliation for complaining about the harassment." Thus, neither Plaintiff's EEOC complaint, nor the EEOC's determination letter, support Plaintiff's assertion that she properly exhausted a claim that State Farm terminated her because of her race.

State Farm also notes that, to the extent Plaintiff asserts a harassment claim, her EEOC complaint identified only one instance of harassment, which was the racist letter she received in April 2016. In her response, Plaintiff relies on her EEOC complaint and the EEOC's findings. However, those documents also refer exclusively to the April 2016 letter. They lend no support to Plaintiff's contention that she exhausted other harassment or discrimination claims.

---

[3] The Court can consider this letter because Plaintiff mentions it and quotes it in her complaint.

Accordingly, the Court will grant State Farm's motion to the extent it seeks to dismiss any harassment or discrimination claims other than Plaintiff's claim regarding the April 2016 letter.

## IV. CONCLUSION

For all the foregoing reasons, the Court will grant State Farm's motion in part. The Court will dismiss the ELCRA claims (Counts III and IV of the complaint) as untimely. The Court will also grant the motion insofar as it seeks dismissal of discrimination and harassment claims under Title VII, other than the harassment claim regarding the April 2016 letter. In all other respects, the Court will deny the motion.

The Court will enter an order that is consistent with this Opinion.

Dated:   July 26, 2022                             /s/ Hala Y. Jarbou
                                                  HALA Y. JARBOU
                                                  CHIEF UNITED STATES DISTRICT JUDGE